IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

WAYMAN KENNEDY,

Plaintiff,                                     Civil Action No.: 2:26 - cv-2096 -SPC-NPM

v.

EQUIFAX INFORMATION SERVICES LLC,

Defendant.                                     **JURY TRIAL DEMANDED**

---

## COMPLAINT

Wayman Kennedy is a working adult in Port Charlotte, Florida. He applied himself, tried to move forward, and found his path blocked at every turn by a credit report that refused to tell him the truth. He went to lenders looking for a car, for a credit card, for a fresh start, and was turned away because his Equifax file told a story full of silence: blank fields, missing numbers, and dates frozen in time like a clock that stopped but no one bothered to fix. That silence was not neutral. It cost him.

When Plaintiff obtained his consumer file disclosure from Equifax Information Services LLC on May 4, 2026, Confirmation Number 6124585942, he discovered what Equifax had been sending to lenders in his name. Across more than a dozen accounts, the 24-month payment histories were

stripped bare: the scheduled payment columns were blank, the actual payment columns were blank, the last payment dates on multiple charged-off accounts were locked to a single date repeated across every row for two years, and balances were reported above their credit limits. This was not noise. This was a system.

The scale of the omission is staggering. Plaintiff's file disclosure contains in excess of 450 blank or missing data fields. On the Midland Credit Management account, every Scheduled Payment Amount and every Actual Payment Amount field across twenty months of history is blank. On the First Premier account, the balance of $706 is reported against a credit limit of $400, meaning the file tells every lender who sees it that Plaintiff somehow owes more than he was ever allowed to borrow. The Last Payment Date on that same account is printed as 04/13/2023 across all twenty-four rows of history, identical and unchanging, a placeholder masquerading as a fact. Six separate LVNV Funding LLC accounts, totaling thousands of dollars, are each missing every Scheduled Payment Amount, every Actual Payment Amount, and every Last Payment Date across their entire histories. Two accounts that Equifax shows as charged-off and transferred are simultaneously appearing as active collection accounts held by a debt buyer, meaning the same alleged debt is being counted twice. Where it stops feeling like an error is where it starts feeling like a policy.

The Fair Credit Reporting Act is not complicated on this point. Section 1681g(a)(1) requires Equifax to disclose to a consumer, upon request, all information in the consumer's file at the time of the request. Not a summary. Not a truncated version. All of it. The FTC told Equifax precisely this more than twenty-five years ago. Equifax's response has been to continue publishing disclosures to consumers that omit the very payment-history data it provides to creditors, continue publishing reports containing balances that exceed stated credit limits, and continue allowing the

same debt to appear simultaneously as both a charged-off original account and an active third-party collection. These are not errors. They are choices.

Plaintiff brings this action to recover for the concrete harm Equifax's failures have caused him, to compel Equifax to produce a complete and accurate consumer file disclosure, and to hold Equifax accountable under the standards Congress established and the courts have enforced.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331, as this action arises under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq., a federal statute. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Port Charlotte, Florida, within the Middle District of Florida, and a substantial part of the events and omissions giving rise to the claims occurred in this district.

## PARTIES

Plaintiff Wayman Kennedy is a natural person residing at 17900 Murdock Cir Unit 104, Port Charlotte, Florida 33948. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c). Defendant Equifax Information Services LLC is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and routinely engages in the business of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties. Defendant's registered agent in the State of Florida may be located through the Florida Secretary of State's corporate database.

## FACTUAL ALLEGATIONS

**A. Credit Report Overview**

1. On May 4, 2026, Equifax Information Services LLC issued to Plaintiff Wayman Kennedy a consumer file disclosure bearing Confirmation Number 6124585942. The report contains fifteen accounts, including multiple charged-off accounts, debt buyer accounts, two active secured and unsecured credit accounts, two collection entries, and two Suncoast Credit Union accounts bearing Narrative Code 167 (Consumer Disputes After Resolution).

**B. Incomplete File Disclosure**

2. Defendant's May 4, 2026 file disclosure systematically omits payment history data that Equifax maintains in Plaintiff's consumer file and provides to third-party creditors. Across the accounts detailed below, Defendant withheld in excess of 450 blank or missing data fields.

3. Midland Credit Management (account ending 9710): Defendant disclosed twenty months of payment history spanning September 2024 through April 2026. For each of the twenty months, the Scheduled Payment Amount field is blank. For each of the twenty months, the Actual Payment Amount field is blank. For each of the twenty months, the Last Payment Date field is blank. The Activity Designator field is blank. The Date of Last Activity field is blank. The Date Closed field is blank. The Charge Off Amount field is blank. The Terms Frequency field is blank.

4. Jefferson Capital LLC (account ending 3462): Defendant disclosed two months of payment history for February and March 2026. For both months, the Scheduled Payment Amount field is blank. For both months, the Actual Payment Amount field is blank. For both months, the Last Payment Date field is blank. The Activity Designator field is blank. The Date of Last Activity field is blank. The Date Closed field is blank. The Charge Off Amount field is blank.

5. First Premier (account ending 5849): Defendant disclosed twenty-four months of payment history spanning May 2024 through March 2026. For each of the twenty-four months, the

Scheduled Payment Amount field is blank. For each of the twenty-four months, the Actual Payment Amount field is blank. The Activity Designator field is blank. The Date of Last Activity field is blank. The Date Closed field is blank.

6. Navy Federal Credit Union (account ending 0875): Defendant disclosed twenty-three months of payment history. The Actual Payment Amount field is blank for the months of December 2025, September 2025, July 2025, May 2025, February 2025, January 2025, December 2024, November 2024, and August 2024, representing nine of the twenty-three disclosed months. The entire Payment History grid for years 2021 through 2026 is blank, with no payment status data displayed for any month. The Activity Designator field is blank.

7. LVNV Funding LLC (account ending 0651): Defendant disclosed twenty-one months of payment history spanning May 2024 through March 2026. For each of the twenty-one months, the Scheduled Payment Amount field is blank. For each of the twenty-one months, the Actual Payment Amount field is blank. For each of the twenty-one months, the Last Payment Date field is blank. The Activity Designator field is blank. The Date of Last Activity field is blank. The Date Closed field is blank. The Charge Off Amount field is blank.

8. LVNV Funding LLC (account ending 9220): Defendant disclosed two months of payment history for February and March 2026. For both months, the Scheduled Payment Amount field is blank. For both months, the Actual Payment Amount field is blank. For both months, the Last Payment Date field is blank. The Activity Designator field is blank. The Date of Last Activity field is blank. The Date Closed field is blank.

9. LVNV Funding LLC (account ending 7355): Defendant disclosed twenty-one months of payment history spanning July 2024 through March 2026. For each of the twenty-one months, the Scheduled Payment Amount field is blank. For each of the twenty-one months, the Actual

Payment Amount field is blank. For each of the twenty-one months, the Last Payment Date field is blank. The Activity Designator field is blank. The Date of Last Activity field is blank. The Date Closed field is blank. The Charge Off Amount field is blank.

10. LVNV Funding LLC (account ending 5369): Defendant disclosed twenty-two months of payment history spanning May 2024 through March 2026. For each of the twenty-two months, the Scheduled Payment Amount field is blank. For each of the twenty-two months, the Actual Payment Amount field is blank. For each of the twenty-two months, the Last Payment Date field is blank. The Activity Designator field is blank. The Date of Last Activity field is blank. The Date Closed field is blank. The Charge Off Amount field is blank.

11. LVNV Funding LLC (account ending 9279): Defendant disclosed eleven months of payment history spanning May 2025 through March 2026. For each of the eleven months, the Scheduled Payment Amount field is blank. For each of the eleven months, the Actual Payment Amount field is blank. For each of the eleven months, the Last Payment Date field is blank. The Activity Designator field is blank. The Date of Last Activity field is blank. The Date Closed field is blank. The Charge Off Amount field is blank.

12. LVNV Funding LLC (account ending 8297): Defendant disclosed twenty-two months of payment history spanning June 2024 through March 2026. For each of the twenty-two months, the Scheduled Payment Amount field is blank. For each of the twenty-two months, the Actual Payment Amount field is blank. For each of the twenty-two months, the Last Payment Date field is blank. The Activity Designator field is blank. The Date of Last Activity field is blank. The Date Closed field is blank. The Charge Off Amount field is blank.

13. Mission Lane Tab Bank (account ending 6633): Defendant disclosed fifteen months of payment history spanning May 2024 through July 2025. For each of the fifteen months, the

Scheduled Payment Amount field is blank. For each of the fifteen months, the Actual Payment Amount field is blank. The Date of Last Activity field is blank.

14. Pinnacle Bank FKA Synovus Bank (account ending 7355): Defendant disclosed no 24-month history table whatsoever for this account. The Scheduled Payment Amount field is blank. The Actual Payment Amount field is blank. The Date of Last Activity field is blank. The Date Closed field is blank.

15. The aggregate count of blank, missing, and suppressed fields across Plaintiff's May 4, 2026 file disclosure exceeds 450 data fields. These omissions are not random. The identical pattern of blank Scheduled Payment Amount, blank Actual Payment Amount, and blank Last Payment Date columns appearing across every single debt buyer and collection account on the same report demonstrates a uniform, deliberate data policy rather than isolated clerical error.

## C. Per Se Inaccuracies

16. First Premier (account ending 5849): Defendant reported a current balance of $706 against a credit limit of $400. The reported balance exceeds the credit limit by $306. A credit balance exceeding a credit limit is a per se inaccuracy because it is a mathematical impossibility under the terms of the account as reported and misleads any creditor reviewing the file into believing Plaintiff has overextended credit beyond his authorized limit.

17. Navy Federal Credit Union (account ending 0875): Defendant reported a current balance of $822 against a credit limit of $800. The reported balance exceeds the credit limit by $22. As with the First Premier account, a balance exceeding the stated credit limit is a per se inaccuracy that negatively misrepresents Plaintiff's creditworthiness to third-party creditors reviewing the file.

## D. Materially Misleading Reporting

18. First Premier (account ending 5849): Defendant reports a Last Payment Date of 04/13/2023 in every single one of the twenty-four rows appearing in the 24-month payment history table. The date 04/13/2023 is displayed identically in the Last Payment Date column for each row spanning May 2024 through March 2026. A date field that does not change across twenty-four consecutive months of history is not a date; it is a static placeholder printed in a field that is meant to reflect dynamic transactional data. This frozen, unchanging date misleads any reader into believing it is a meaningful, individually verified data point when it is in fact an artifact of systemic data-processing failure.

19. Mission Lane Tab Bank (account ending 6633): Defendant reports a Last Payment Date of 06/22/2023 in every single one of the fifteen rows appearing in the 24-month payment history table, spanning May 2024 through July 2025. This identical date appearing across fifteen consecutive rows is a static placeholder indistinguishable from the First Premier pattern. Simultaneously, Defendant reports an Activity Designator of Transfer/Sold on this charged-off account while Defendant also reports an active collection by LVNV Funding LLC (account ending 7355) on the same file with the same original balance of $584 and the same Date of First Delinquency of August 2023. Defendant is thus reporting the same underlying debt as both a closed charged-off original account and an active third-party collection, inflating the derogatory entries on Plaintiff's file and overstating the scope of his delinquent obligations. See Pittman v. Experian Information Solutions, Inc., 901 F.3d 619 (6th Cir. 2018).

20. First Premier (account ending 5849): Defendant simultaneously displays Narrative Code 174 (Amount In High Credit is Original Charge-Off Amount) and Narrative Code 233 (Amount in High Credit Column is Credit Limit) on the same account in every month of the 24-month history. These two codes are directly contradictory: the High Credit column cannot

simultaneously represent the original charge-off amount and the credit limit. This internal conflict renders the High Credit field meaningless and prevents any creditor or consumer from determining what the field actually represents.

### E.  Third-Party Dissemination

21.  On December 7, 2025, Defendant transmitted Plaintiff's consumer report to Capital One, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure. Defendant transmitted a consumer report containing the incomplete disclosures, per se inaccuracies, and materially misleading entries described herein.

22.  Internal account review inquiries appearing on Plaintiff's file, including reviews by Navy Federal Credit Union, Capital One Auto Finance, and Verizon Wireless, confirm that Plaintiff's consumer file was actively maintained, used, and transmitted during the period of the violations described herein.

### F.  Dispute History

23.  Suncoast Credit Union (account ending 0100): Defendant's May 4, 2026 disclosure carries Narrative Code 167 (Consumer Disputes After Resolution) on this account, confirming that Plaintiff previously disputed this account, that Equifax conducted a reinvestigation, and that the account remains on Plaintiff's file following that reinvestigation.

24.  Suncoast Credit Union (account ending 0101): Defendant's May 4, 2026 disclosure carries Narrative Code 167 (Consumer Disputes After Resolution) on this account, confirming that Plaintiff previously disputed this account, that Equifax conducted a reinvestigation, and that the account remains on Plaintiff's file following that reinvestigation.

25.  Plaintiff timely submitted disputes regarding the Suncoast Credit Union accounts to Equifax and received reinvestigation determinations. Following those reinvestigations, the Suncoast

accounts continue to appear on Plaintiff's file and continue to carry Narrative Code 167, which Defendant embeds in the file but does not prominently display in a manner that would alert prospective creditors that these accounts are or were disputed by the consumer.

## G. Systemic Reinvestigation Failure

26. Defendant's reinvestigation of the Suncoast Credit Union accounts was not a reasonable reinvestigation within the meaning of 15 U.S.C. § 1681i(a)(1)(A). A reinvestigation that consists of forwarding the consumer's dispute to the furnisher and accepting the furnisher's response without independent verification does not satisfy the statute's requirement of a reasonable investigation into the accuracy of the disputed information. See Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997).

27. Following its reinvestigation of the Suncoast accounts, Defendant failed to delete the disputed information or modify it in accordance with 15 U.S.C. § 1681i(a)(5)(A). Defendant's maintenance of these accounts on Plaintiff's file following reinvestigation, without deletion or meaningful modification, violates the statute's requirement that items which cannot be verified must be deleted.

28. Defendant failed to include, in subsequent consumer reports furnished after the completion of reinvestigation, a notation that the Suncoast Credit Union accounts are disputed by the consumer, in violation of 15 U.S.C. § 1681i(c). Narrative Code 167 appears in Plaintiff's own file disclosure but does not constitute adequate notation of disputed status in reports transmitted to third-party creditors.

## H. Willfulness

29. Defendant's violations are willful within the meaning of 15 U.S.C. § 1681n. The FTC Advisory Opinion to Katrina Darcy, issued June 30, 2000, placed all nationwide consumer reporting

agencies on specific notice more than twenty-five years ago that withholding data fields from a consumer's own file disclosure while providing that same data to third-party creditors violates 15 U.S.C. § 1681g(a)(1). Defendant's continued operation of a disclosure policy that systematically omits payment history data across every debt buyer and collection account in a consumer's file is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007).

30.  The identical pattern of blank Scheduled Payment Amount columns, blank Actual Payment Amount columns, blank Last Payment Date fields, and static frozen dates appearing uniformly across every debt buyer and collection account on the same file confirms that these omissions result from deliberate, uniform data policy rather than isolated error. Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020).

31.  The absence of any automated comparison of a consumer's reported balance against the account's credit limit before publication of a consumer report, resulting in the per se inaccuracies described in paragraphs 15 and 16, reflects an objectively unreasonable data-integrity policy under Safeco, 551 U.S. at 69.

**I. Actual Damages**

32.  As a direct and proximate result of Defendant's violations of the Fair Credit Reporting Act, Plaintiff has suffered actual damages including: emotional distress arising from the discovery that his consumer file contained hundreds of blank fields, impossible balances, and duplicated derogatory entries; impairment of his creditworthiness attributable to the reporting of balances exceeding credit limits and dual-reporting of the same debt as both charged-off and active collection; loss of credit opportunities, including the inability to obtain credit on favorable terms, as a direct consequence of the inaccurate and incomplete information published in his

consumer report; the inability to verify the accuracy of derogatory notations on his file due to Defendant's systematic suppression of payment history data; and the expenditure of time and personal resources investigating and attempting to address the errors in his consumer file.

## CAUSES OF ACTION

## COUNT I

## Violation of 15 U.S.C. § 1681g(a)(1)

## Failure to Disclose All Information in Consumer File

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

33. Section 1681g(a)(1) of the Fair Credit Reporting Act provides that every consumer reporting agency shall, upon request and subject to section 1681h(a)(1), clearly and accurately disclose to the consumer, all information in the consumer's file at the time of the request.

34. On May 4, 2026, Plaintiff made a proper request for his consumer file disclosure and Defendant responded with a disclosure bearing Confirmation Number 6124585942.

35. Defendant violated 15 U.S.C. § 1681g(a)(1) by issuing a consumer file disclosure that omits in excess of 450 data fields that Defendant maintains in Plaintiff's consumer file and discloses to third-party creditors who review Plaintiff's consumer report. The omitted fields include: Scheduled Payment Amount fields blank across every month of history for Midland Credit Management (20 months), Jefferson Capital LLC (2 months), First Premier (24 months), LVNV Funding LLC accounts ending 0651 (21 months), 7355 (21 months), 5369 (22 months), 9220 (2 months), 9279 (11 months), 8297 (22 months), and Mission Lane Tab Bank (15 months); Actual Payment Amount fields blank across corresponding months for the same

accounts; Last Payment Date fields blank for the same debt buyer and collection accounts; the entire 24-month payment history table suppressed for Pinnacle Bank FKA Synovus Bank; and the Activity Designator field blank across multiple accounts.

36. The systematic suppression of payment history data across every debt buyer and collection account on Plaintiff's file, while the same data is transmitted to third-party creditors, denies Plaintiff the ability to review, verify, and dispute the accuracy of his own consumer file, in direct violation of the purpose and mandate of 15 U.S.C. § 1681g(a)(1). Alexander v. Equifax, No. 2:17-cv-09070, 2018 WL 3025939 (D. Nev. June 18, 2018); Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir. 2007).

37. Defendant's violation of 15 U.S.C. § 1681g(a)(1) was willful within the meaning of 15 U.S.C. § 1681n, as Defendant had been placed on specific notice of its obligations under this subsection by the FTC Advisory Opinion to Darcy (June 30, 2000) and has continued the same disclosure practice for more than twenty-five years thereafter. Safeco, 551 U.S. at 69.

38. As a result of Defendant's willful violation of 15 U.S.C. § 1681g(a)(1), Plaintiff is entitled to: actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT II

### Violation of 15 U.S.C. § 1681e(b)

### Per Se Inaccuracy in Consumer Report

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

39. Section 1681e(b) of the Fair Credit Reporting Act provides that whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

40. Defendant violated 15 U.S.C. § 1681e(b) by preparing and publishing consumer reports that contained the following per se inaccuracies: (a) the First Premier account (ending 5849) with a reported current balance of $706 against a credit limit of $400, meaning the reported balance exceeds the credit limit by $306; and (b) the Navy Federal Credit Union account (ending 0875) with a reported current balance of $822 against a credit limit of $800, meaning the reported balance exceeds the credit limit by $22. A credit card balance exceeding the account's stated credit limit is a mathematical impossibility under the account terms as reported and constitutes a per se inaccuracy that cannot survive any reasonable accuracy procedure.

41. Defendant failed to implement any automated data-integrity check comparing reported balance against credit limit before publishing a consumer report. The absence of any such check is objectively unreasonable and constitutes a failure to follow reasonable procedures to assure maximum possible accuracy, in violation of 15 U.S.C. § 1681e(b). Safeco, 551 U.S. at 69.

42. Defendant's violation of 15 U.S.C. § 1681e(b) as to the per se inaccuracies described above was willful within the meaning of 15 U.S.C. § 1681n. Defendant's failure to implement a basic accuracy check comparing balance to credit limit before publishing consumer reports reflects an objectively unreasonable approach to data integrity.

43. As a result of Defendant's willful violation of 15 U.S.C. § 1681e(b), Plaintiff is entitled to: actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n(a)(1);

statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT III

### Violation of 15 U.S.C. § 1681e(b)

### Materially Misleading Reporting

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

44. Section 1681e(b) of the Fair Credit Reporting Act requires that consumer reporting agencies follow reasonable procedures to assure maximum possible accuracy. A report need not be technically false to violate this provision; a report that creates a materially misleading impression is equally prohibited. Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).

45. Defendant violated 15 U.S.C. § 1681e(b) by preparing and publishing consumer reports containing the following materially misleading entries:

46. First, the First Premier account (ending 5849) displays an identical Last Payment Date of 04/13/2023 in each of the twenty-four rows of the 24-month payment history table. A date field that never changes across twenty-four consecutive months is a static placeholder, not a verified data point. Any creditor reviewing this report would reasonably interpret a date in that field as reflecting the actual last transaction date for the corresponding period, and would be materially misled. The static presentation of 04/13/2023 across all rows spanning May 2024 through

March 2026 falsely implies that Equifax verified and confirmed a payment date for each of those twenty-four periods, when in fact it inserted an identical string in every field.

47. Second, the Mission Lane Tab Bank account (ending 6633) displays an identical Last Payment Date of 06/22/2023 across each of the fifteen rows of its 24-month payment history table spanning May 2024 through July 2025. The same static-placeholder pattern present in the First Premier account appears here, misrepresenting twenty-four months of payment history as containing individually verified data.

48. Third, Defendant reports the Mission Lane Tab Bank account (ending 6633) with an Activity Designator of Transfer/Sold and Narrative Code 123 (Account Transferred or Sold), confirming the underlying debt was sold following charge-off. Simultaneously, Defendant reports LVNV Funding LLC (account ending 7355) as an active collection account with a balance of $584, a Date of First Delinquency of August 2, 2023, and opened January 19, 2024. The original Pinnacle Bank FKA Synovus Bank account (ending 7355) carried the identical balance of $584 and the identical Date of First Delinquency of August 2, 2023 before being charged off and transferred. Defendant's simultaneous reporting of both the charged-off original account and the successor debt buyer's active collection account inflates the derogatory tradelines on Plaintiff's consumer report and overstates the volume of his delinquent obligations. See Pittman v. Experian Information Solutions, Inc., 901 F.3d 619, 629 (6th Cir. 2018).

49. Fourth, the First Premier account (ending 5849) simultaneously carries Narrative Code 174 (Amount In High Credit is Original Charge-Off Amount) and Narrative Code 233 (Amount in High Credit Column is Credit Limit) in every month of the 24-month history. These codes are mutually exclusive and directly contradictory. A single column cannot simultaneously

represent two different values. The contradictory codes render the High Credit field meaningless and materially mislead any creditor attempting to evaluate the account.

50. Defendant's violations described in this Count were willful within the meaning of 15 U.S.C. § 1681n. The identical static-placeholder date pattern appearing on multiple accounts, the dual-reporting of the same underlying debt, and the simultaneous reporting of contradictory narrative codes all reflect deliberate, uniform data policy rather than isolated oversight. Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020). Safeco, 551 U.S. at 69.

51. As a result of Defendant's willful violation of 15 U.S.C. § 1681e(b), Plaintiff is entitled to: actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT IV

### Violation of 15 U.S.C. § 1681i(a)(1)(A)

### Failure to Conduct Reasonable Reinvestigation

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

52. Section 1681i(a)(1)(A) of the Fair Credit Reporting Act provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, the agency

shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information.

53. As confirmed by Narrative Code 167 (Consumer Disputes After Resolution) appearing on both Suncoast Credit Union accounts (ending 0100 and 0101), Plaintiff previously submitted disputes to Equifax regarding these accounts, and Defendant conducted reinvestigations and reached determinations.

54. Defendant's reinvestigation of the Suncoast Credit Union (account ending 0100) was not a reasonable reinvestigation within the meaning of 15 U.S.C. § 1681i(a)(1)(A). A reinvestigation consisting of forwarding Plaintiff's dispute to the furnisher and accepting the furnisher's response without independent analysis does not satisfy the statute. Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997).

55. Defendant's reinvestigation of the Suncoast Credit Union (account ending 0101) was similarly not a reasonable reinvestigation within the meaning of 15 U.S.C. § 1681i(a)(1)(A).

56. Defendant's violation of 15 U.S.C. § 1681i(a)(1)(A) was willful within the meaning of 15 U.S.C. § 1681n. Safeco, 551 U.S. at 69.

57. As a result of Defendant's violation of 15 U.S.C. § 1681i(a)(1)(A), Plaintiff is entitled to: actual damages pursuant to 15 U.S.C. § 1681n(a)(1) and 1681o(a)(1); statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. § 1681n(a)(3) and 1681o(a)(2).

## COUNT V

### Violation of 15 U.S.C. § 1681i(a)(5)(A)

**Failure to Delete or Modify Unverifiable Information**

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

58.    Section 1681i(a)(5)(A) of the Fair Credit Reporting Act provides that if, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the agency shall promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate.

59.    Following its reinvestigation of the Suncoast Credit Union account (ending 0100), Defendant failed to delete the disputed information or modify it in a manner consistent with 15 U.S.C. § 1681i(a)(5)(A). The account continues to appear on Plaintiff's file bearing Narrative Code 167, confirming the account survived reinvestigation without deletion or meaningful modification.

60.    Following its reinvestigation of the Suncoast Credit Union account (ending 0101), Defendant similarly failed to delete the disputed information or modify it in a manner consistent with 15 U.S.C. § 1681i(a)(5)(A).

61.    Defendant's violation of 15 U.S.C. § 1681i(a)(5)(A) was willful within the meaning of 15 U.S.C. § 1681n. Safeco, 551 U.S. at 69.

62.    As a result of Defendant's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff is entitled to: actual damages pursuant to 15 U.S.C. § 1681n(a)(1) and 1681o(a)(1); statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. § 1681n(a)(3) and 1681o(a)(2).

**COUNT VI**

## Violation of 15 U.S.C. § 1681i(c)

## Failure to Note Disputed Status in Subsequent Reports

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

63. Section 1681i(c) of the Fair Credit Reporting Act provides that whenever a statement of a dispute is filed, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary of the statement.

64. Defendant failed to include in consumer reports furnished to third parties following its reinvestigation of the Suncoast Credit Union accounts (ending 0100 and 0101) a clear notation that these accounts are disputed by the consumer. Narrative Code 167 appears in Plaintiff's own file disclosure but does not constitute clear notation of disputed status in reports transmitted to third-party creditors reviewing Plaintiff's file. Carvalho v. Equifax Information Services, LLC, 629 F.3d 876, 892 (9th Cir. 2010).

65. The failure to note disputed status in subsequent consumer reports means that every creditor who reviewed Plaintiff's file after his disputes were filed received a report that omitted the material fact that the Suncoast Credit Union accounts are or were disputed by the consumer.

66. Defendant's violation of 15 U.S.C. § 1681i(c) was willful within the meaning of 15 U.S.C. § 1681n. Safeco, 551 U.S. at 69.

67. As a result of Defendant's violation of 15 U.S.C. § 1681i(c), Plaintiff is entitled to: actual damages pursuant to 15 U.S.C. § 1681n(a)(1) and 1681o(a)(1); statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. §

1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. § 1681n(a)(3) and 1681o(a)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Wayman Kennedy respectfully requests that this Court enter judgment in his favor and against Defendant Equifax Information Services LLC, and award the following relief:

(a)  Judgment for Plaintiff on all counts;

(b)  Actual damages in an amount to be proven at trial pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c)  Statutory damages in the amount of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

(d)  Punitive damages for Defendant's willful violations of the Fair Credit Reporting Act pursuant to 15 U.S.C. § 1681n(a)(2);

(e)  Costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

(f)  Injunctive relief requiring Defendant to produce to Plaintiff a complete and corrected consumer file disclosure containing all data fields maintained in Plaintiff's consumer file, correcting all inaccuracies identified herein, and resolving all contradictory narrative code designations; and

(g)  Such other and further relief as this Court deems just and proper.

Plaintiff reserves the right to amend this Complaint pursuant to FRCP Rule 15(a) to add reinvestigation counts under 15 U.S.C. § 1681i following expiration of the CRA's 30-day reinvestigation window.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil

Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,


Wayman Kennedy

Pro Se Plaintiff

17900 Murdock Cir Unit 104

Port Charlotte, Florida 33948

(941) 268-1618


Date: 6-26-26


## EXHIBIT LIST

Exhibit A — Full Equifax consumer file disclosure, Confirmation Number 6124585942, dated May

4, 2026 (22 pages)

Exhibit B — FTC Advisory Opinion to Katrina Darcy, June 30, 2000

Exhibit C — Blank/ND field inventory table

Exhibit D — Certified dispute letters and USPS green cards (Suncoast Credit Union accounts)